26 C.C.P.A. (Patents)

## PARKER v. BALLANTINE.

### Patent Appeal No. 4026.

Court of Customs and Patent Appeals.
Jan. 23, 1939.

J. F. Mothershead, of Washington, D. C. (T. Hayward Brown, of Washington, D. C., of counsel), for appellant.

Harry G. Grover, of New York City (C. L. Davis, of Washington, D. C., and Ira J. Adams, A. S. Greenberg, and J. G. Norton, all of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office in an interference proceeding between the senior party Ballantine, appellee, and the junior party Parker, appellant.

In order that the subsequent discussion may be more readily understood it is thought proper to state at this point in the decision that, in view of our conclusion, the sole issue to be determined is whether

or not the party Parker can make the one count in issue which is a claim copied from the reissued patent of the appellee Ballantine.

On May 23, 1933, Ballantine obtained reissue patent No. 18,835, being a reissue of his original patent No. 1,723,719, granted August 6, 1929, on an application filed January 9, 1923, the application for reissue being filed June 13, 1930.

Parker obtained on June 5, 1928, original patent No. 1,672,037, on an application filed March 12, 1924.

The original applications of Ballantine and Parker were thus co-pending. Both parties rely upon the disclosures in their original applications. Ballantine, as is above shown, was the senior party. He took no testimony and relied upon his filing date as the basis for his claim of priority.

On May 28, 1930, Parker filed application for reissue of his said patent No. 1,-672,037. In due course certain of the new claims were rejected on Ballantine's original patent No. 1,723,719. Six days after Ballantine's reissued patent was granted, Parker, in his reissue application, copied three of the claims appearing in the Ballantine reissued patent and an interference was duly declared on the said three claims as counts of the interference.

Ballantine moved for dissolution of the interference on the ground, among others, that the counts were not supported by the disclosure of Parker's original application. The Primary Examiner, after hearing the arguments, held that Parker could not make two of the claims but that he could make one of them—the claim corresponding to the count of this interference. Parker took no appeal as to the ruling on the two first-above-referred to claims and proceeded to take testimony to support his allegations as to priority of the single count here involved.

The Examiner of Interferences held that there being no new evidence before him which was not before the Primary Examiner, he was precluded, under rule 130, from ruling on the question of dissolution on the ground that Parker could not make the claim. The Examiner of Interferences held that the proof submitted by Parker warranted granting him priority on the count.

Upon appeal, the Board of Appeals, after carefully considering the Parker dis-closure, concluded that the invention of the count at bar was not disclosed in Parker's original application and that Parker could not make the claim. The board furthermore held, after considering the Parker testimony, that if it was subsequently held that Parker could make the claim, it was of the opinion that the testimony adduced "does not necessarily conform to the application disclosure, i. e., if the results here involved were attained, it is conceivable that they are attained by a procedure corresponding to that taught by Ballantine rather than that taught by Parker."

The single count of the interference reads as follows: "1. In an electrical communication system, the combination with a high frequency amplifier of side band modulated carrier energy and means impressing upon an amplification-control circuit of said amplifier a direct current potential appropriate for the normal amplification of relatively weak carrier energy, of means effective automatically to reduce the amplification of said amplifier as the carrier strength increases, said second means comprising a rectifier, means transmitting to said rectifier the modulated carrier output of said amplifier, and circuit elements for superposing upon said direct current potential a second potential derived from said rectifier and varying in magnitude with the rectified modulated carrier energy."

Both parties are in agreement that the invention of the count is predicated upon a combination of elements which constitute an electrical communication system which system involves "means effective automatically to reduce the amplification of said amplifier as the carrier strength increases." As we understand it, the gist of the invention in the combination forming the communication system rests in automatically reducing amplification of the amplifier as the strength of the carrier wave or signal increases, and we find it unnecessary to consider any other feature of the count. Other questions are discussed in the briefs of the parties, but in view of our conclusion that Parker in his original application made no disclosure of this feature, it is unnecessary for us to deal more than superficially with any other phase of the question.

Appellant states that he has concurring conclusions by the Primary Examiner and the Examiner of Interferences on his right to make the count. Under the facts here-

inbefore stated, we think that this statement is inaccurate.

The object of Parker's original invention as stated in his patent No. 1,672,037 was the amplification of electrical currents, particularly the amplification of high frequency electrical currents modulated at low or audible frequency. He states: "A particular object of the invention is the efficient amplification of the currents at high frequency and having so amplified the currents to reduce them to low frequencies and further amplifying the low frequency currents in the presence of the high frequency currents, using the same amplifying devices for the dual function."

For the purpose of obtaining this *efficient amplification,* Parker used a biasing battery (commonly known as a "C" battery) by which the grids of his amplifier tubes were worked "at a *most efficient* potential for amplification." [Italics ours.]

It will be seen that if Parker was seeking to get the best amplification obtainable, as his phrase "at a most efficient potential for amplification" would seem to indicate, he could not have had in mind the automatic reduction of amplification as the carrier strength increased, and there is no indication that he aimed to supplement the normal bias on the radio-frequency tubes in such a manner as to cut down signal strength.

The Primary Examiner, in refusing to dissolve the interference as to count 1 at bar, stated that the count must be held to define that which is inherent in the system and that it was *possible* that Parker's original patent showed that his system would operate in the manner of the count. He said: " * * * Parker's original claims on the structure of the system defined one, such that there *might well be* a reduction of certain amplification consistently with the broad statement regarding amplification, and in fact, as above noted, this count will actually read onto the system which such claims cover. Under these circumstances this count must be held to define that which is *inherent* in the system. * *" [Italics ours.]

The Board of Appeals, in passing upon the question of whether Parker could make the count, said:

"In coming to the conclusion that the Parker disclosure supports count 1, the Primary Examiner construed the reference in the specification to 'biasing at a most efficient potential for amplification' to mean biasing at the center of that portion of the tube characteristic which most nearly approaches a straight line. We think it well understood now, and it doubtless was also at the time Parker filed his application, that an amplifier would work most efficiently when so biased.

"It is the examiner's view that an amplifier such as disclosed by Parker, when biased at the stated point on the characteristic curve, would inherently have its efficency reduced by the addition of a further direct current component to the bias. It is clear enough that the circuit shown would aid such a component but we are not satisfied that its value would be such as to change, to any material extent, the amplification characteristics of the tube. The characteristic curve of an amplifying tube has a considerable portion which approaches a straight line. Operation of the tube with a bias at any point along this portion would not appreciably change the amplifying efficiency of the tube. Moreover, it is not clear that in operating a set such as disclosed in the application, the bias would not be changed intentionally as a shift was made from one station to another. If, as the specification states, the receiver is to be biased for most efficient amplification, we think it fair to assume that this bias would be changed from station to station in order to maintain this efficiency for all conditions of operation; in other words, that the bias would be maintained at all times on the straight portion of the tube characteristic.

"In theory, a set such as shown by Parker, biased as described, would show some evidence of amplification decrease upon tuning from one station to another having a carrier strength varying from that either upwardly or downwardly from the station used in making the initial adjustment but it seems to us that this change would be wholly incidental or accidental, and not of such substantial character as to warrant a holding that the Parker application as originally filed affords a proper basis for the count. It is our view, therefore, that priority should have been awarded to the party Ballantine on the ground that the party Parker has no right to make the count."

We are in agreement with the decision of the board that the Parker application as originally filed affords no proper basis for the count of this interference. We think that to obtain the most efficient amplifica-

tion, the bias would be maintained at all times on the more nearly linear portion of the characteristic curve of the tube, which would, of course, not result in a reduction of the amplification when the carrier wave or signal came in strongly.

As to the holding of the Examiner of Interferences that it was *possible* that Parker's system would operate in the manner of the count and that the subject matter of count 1 was therefore inherent in his system, we think that the principle declared in the following cases is decisive to the contrary: In re Ball, 81 F.2d 242, 23 C.C.P.A., Patents, 830; Stafford Co. v. Coldwell-Gildard Co. et al., 1 Cir., 202 F. 744. See also In re Williams, 75 F.2d 520, 22 C.C.P.A., Patents, 1019.

The case of In re Ball, supra, involved the question of the function of a claim being inherent in an electric switch to which was attached a protective hood for the prevention of arcing. The question there was whether or not the structure would inherently suppress arcing. It was obvious that a structure might be built in accordance with the disclosure which would in some instances suppress arcing and in other instances would not do so. It was our view there that under such circumstances it could not be said that the structure inherently suppressed arcing. We said [page 244]: "While appellant's counsel concedes that appellant's specification does not mention the function of arc suppression in the device disclosed by him, he contends that such function is inherent in the device, and he introduced into the record several affidavits stating that devices constructed in accordance with his disclosure do in fact have the function of arc suppression. Upon this point we agree with the board that while such structures may suppress arcing, structures may be produced strictly in accordance with appellant's disclosure which would not possess such function, inasmuch as no dimensions of the openings in the hood are disclosed, and it is clear to us that they may be of sufficient size as to be ineffective to suppress arcing. It therefore cannot be said that the function of suppression of destructive arcing is inherent in the device disclosed by appellant."

Much the same situation prevails here. Possibly in the operation of the Parker device, at some point on the more nearly linear portion of the characteristic curve of the tube, it might actually happen that there would be slight reduction of amplification, but it is apparent that this would not necessarily be the result.

In Stafford Co. v. Coldwell-Gildard Co. et al., supra, involving the question of the validity of a reissued patent, the court considered whether or not "inadvertence, accident or mistake" resulted from the failure to claim something which had to be inferred from the original disclosure. In holding invalid a claim in a reissued patent because of lack of original disclosure, the court said [page 745]: "Starting with these propositions, the rules which govern the Commissioner and the courts are those applied by the fundamental principles of equity, that in order to relieve against 'inadvertence, accident or mistake' there must be clear and positive proof that there was such 'inadvertence, accident or mistake,' and that the party asking for relief acquires no more than he was originally entitled to. The burden of maintaining the facts to which these requirements relate is of a character that requires clear and positive proof, in harmony with the universal rules of equity not to disturb the existing status except by proof of that character. *No mere inferences can take the place of such proof. Ordinarily, what is called for by the words 'same invention' should appear in some way on the face of the original patent, and it cannot be gathered from mere inferences* or suggestions with reference to what the patentee might or might not have conceived." [Italics ours.]

We have carefully read and studied the Parker record, but a consideration of the language of the count alone is sufficient to illustrate the highly technical subject matter involved in this interference, and while the rule as to concurring decisions of the Patent Office tribunals, which is so familiar as to require no restatement here, is not applicable, it is proper to say, as we said in Daley v. Trube, 88 F.2d 308, 24 C.C.P.A., Patents, 964, that upon such a highly technical question as is here involved, and as was there involved, it should be made clear to the court that the decision appealed from is erroneous.

From our understanding of the Parker disclosure it is our view that the invention of the count was not disclosed either inherently or otherwise in the original Parker application. Certainly it has not been made clear to us that the board was in error in its conclusion relating to the highly technical matter involved.

We are, to some extent, confirmed in our view that the board's conclusion was without error by a consideration of the fact that at no place in Parker's original application or in his application for reissue was this invention ever referred to or claimed, and that it was not until after the Ballantine patent reissued that Parker made any contention that he was ever the inventor of the particular invention here under consideration.

Finding no error in the decision of the Board of Appeals, awarding priority of invention to the senior party Ballantine, its decision is affirmed.

Affirmed.