26 C.C.P.A. (Patents)

## HANSGIRG v. KEMMER.
### Patent Appeal No. 4077.

Court of Customs and Patent Appeals.
Feb. 27, 1939.

Brown, Critchlow & Flick, of Pittsburgh, Pa. (Jo. Baily Brown and Fulton B. Flick, both of Pittsburgh, Pa., of counsel), for appellant.

H. C. Bierman, of New York City, for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

This is an appeal by the junior party Hansgirg from a decision of the Board of Appeals of the United States Patent Office, affirming that of the Examiner of Interferences awarding priority of invention in two counts of an interference, which counts define an invention relating to a process of producing substantially pure magnesium.

The interference involves Kemmer's application, serial No. 542,104, filed June 4, 1931, and Hansgirg's patent, No. 2,003,487, issued June 4, 1935, on an application filed February 3, 1933.. Both counts were taken from the Hansgirg patent. Since Hansgirg's dates were all subsequent to those of Kemmer, the sole issue raised in the interference related to the right of Kemmer to make claims corresponding to the counts.

The invention as defined by the counts is particularly concerned with a process of producing magnesium which involves the removal of dust from magnesium vapor before it is condensed, the dust removal step being regarded as the novel feature of the invention. It was old in the art, prior to the entrance of either party into the field, to distill magnesium vapor from magnesium powder whether in powdered form or in the form of briquettes, and then to subsequently condense the same into metallic magnesium.

The record shows that the Primary Examiner, when Kemmer attempted to claim the invention of these counts in his said application, ruled that Kemmer's disclosure did not warrant the allowance of the claims. He held that Kemmer's disclosure did not show the sequence of steps required by the claims and that the matter which he inserted in his amended application, which was to afford a basis for said claims, was new matter.

Thereafter, Kemmer filed a motion in another interference between himself and Hansgirg, involving a different application and patent, and sought to add for interference purposes the claims of the Hansgirg patent which are the present counts. The Primary Examiner ruled that Kemmer did not disclose the invention. Upon appeal to the Board of Appeals, the decision of the Primary Examiner, holding that Kemmer could not make the proposed counts, was reversed, one member of the board dissenting. The present interference was then declared, and on account of the respective dates as is above shown, Hansgirg was ordered to show cause why judgment on the record should not be entered against him. Hansgirg filed answer which amounted to a motion to dissolve, claiming that Kemmer's application did not disclose the invention. The Examiner of Interferences, in view of the ruling of the board heretofore referred to, overruled Hansgirg's motion and, on the record, awarded priority to Kemmer. Hansgirg appealed to the Board of Appeals, which was the same board that had rendered the decision on the appeal from the Primary Examiner in the other interference. It again, by a majority opinion, one member dissenting, held that Kemmer could make the counts and affirmed the action of the Examiner of Interferences in awarding priority to him. Hansgirg then took an appeal to this court and the sole question presented is the right of Kemmer to make the claims corresponding to the counts.

Count 2 is similar in all respects to count 1, except that it contains the provision that the heating of the material containing the metallic magnesium in order to liberate the magnesium vapor is done *under reduced pressure*. For the purpose of this appeal, both counts may be regarded as identical. Count 1 reads as follows: "1. The process for producing substantially pure magnesium which comprises heating material containing metallic magnesium, to liberate magnesium vapor therefrom, removing the resulting vapor by a non-oxidizing gas from the heated zone, separating out dust from said vapor, and thereafter passing it into a condensation zone, and cooling it to condensation point."

It will be noticed that method count 1 contains the following five steps:

1. Heating the material containing metallic magnesium.

2. Removing the resulting vapor by a non-oxidizing gas from the heated zone.

3. Separating dust from the vapor.

4. Thereafter passing it into a condensation zone.

5. Cooling it to a condensation point.

Hansgirg argues here that neither in specification nor claims in the Kemmer application under consideration is there any mention of dust or its removal; that Kemmer never attempted to claim the subject matter, which is the heart of the invention involved, until after he had become advised of the Hansgirg disclosure in a Canadian patent; that the third stage of separating dust from vapor is a distinct and separate step from the other steps of the process, which follows the removal of the magnesium vapor from the heated zone, and that the counts must be so construed, if the same is to be regarded as valid, in view of the prior art; that since the counts are taken from the Hansgirg patent, they must be construed in the light of the teachings of the patent and that Hansgirg shows a separate step with a screen for removing the dust interposed between the vaporizing material and the condensation chamber; that in the Kemmer application the dust problem was not considered and no mention of screening the dust from the vapor either in the heating zone or elsewhere is disclosed.

Kemmer relies for disclosure of the subject matter of the counts on the following language in his application: "In order to obtain highly refined magnesium metal I subject the metal obtained as above described to a distillation operation in a non-oxidizing atmosphere or in a vacuum and condense the vapors of magnesium to pure metal. Similarly the *quickly cooled powder mentioned above either as such or formed into briquets with or without a binder* may be directly subjected to this distillation operation for a more direct recovery of pure metal." [Italics ours.]

Kemmer contends, and a majority of the board agreed with him, that since he disclosed that his vaporizing heat was applied to the magnesium powder "formed into briquets with or without a binder," the vaporized magnesium in the briquette would find its way through the binder in such a way as to leave the dust behind.

The binder of the briquettes is relied upon as supplying the disclosure of the portion of the counts which relates to the separation of the dust from the vapor.

We are not in agreement with the conclusion of the board in this respect and in deciding the issue involved it will not be necessary for us to discuss the question which Hansgirg seeks to present to the effect that the counts must be given the construction he argues for in order to make them valid, nor will it be necessary for us to consider the question discussed and argued at such great length by both parties as to whether or not the dust separation referred to in the counts must be regarded as occurring outside the heated chamber. We think that the decision of the issue may rest upon a ground concerning which there should be little dispute.

Where one copies a claim from an inadvertently issued patent it should clearly appear that his application disclosed the invention, either expressly or inherently. See McKee v. Noonan, 86 F.2d 986, 24 C.C.P.A., Patents, 784; Lindley v. Shepherd, 58 App.D.C. 31, 24 F.2d 606. He may disclose the invention by drawings, by the use of language, or he may disclose it by reciting and teaching such subject matter as will inherently do the thing or possess the quality which is claimed for it. So it is not enough to say that Kemmer said nothing about dust removal or about a screen which would remove it if the process defined by Kemmer would inherently perform the function in the manner prescribed by the count. Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient. See Parker v. Ballantine, 101 F.2d 220, 26 C.C.P.A., Patents, —, decided January 23, 1939; In re Ball, 81 F.2d 242, 23 C.C.P.A., Patents, 830; Brand v. Thomas, 96 F. 2d 301, 25 C.C.P.A., Patents, 1053. If, however, the disclosure is sufficient to show that the natural result flowing from the operation as taught would result in the performance of the questioned function, it seems to be well settled that the disclosure should be regarded as sufficient.

Now, when we view Kemmer's disclosure in the light of these principles, does it clearly show that his process inherently separates the dust from the vapor? We think not. Nothing is disclosed in his application that he sought to separate dust from vapor or that it was any part of the problem he was attempting to solve. He was attempting and did show a method of vaporizing magnesium from the magnesium material whether it was in the form of powder or in a briquette, either bound or unbound. There is no contention here, as we understand it, unless it be by inference, that there was any screening or separation of the vapor when vaporized, by heating the unbound powder, nor do we think there is any serious contention that there was any separation of dust from the vapor involved where the unbound briquette was used. It is contended by Kemmer, and found by the board, that the binding around the briquette acted as a screen through which the vapors passed during the process of vaporizing and that the critical element of the counts was, therefore, disclosed in the meagre sentence relating to the possible use of a bound briquette. Regardless of the question raised by Hansgirg as to the dust screening occurring after leaving the heating chamber, this interpretation of the counts is certainly not the meaning which the patentee gave in his application. In both forms of the invention shown by the drawings in his application he shows a screen in the form of loose, granular material, separate and apart from the material being heated.

Kemmer argues that binders are usually made up of bituminous substances which are porous and that the passage of the vapor through the porous material would screen out the dust. There is no disclosure in Kemmer's application that the binder was to be made of a material of a porous character, or that it would be made of any particular kind of material which would perform the function of screening. It is remotely possible that some kind of screen or binding might be placed around the briquette which would, to some extent, perform the function that Kemmer and the board now claim for it, but it is not sufficient, under the above-stated, well-settled principles, to say that a binder *might* be selected which *might* do a certain thing. It would seem to us that we would be wholly unjustified in holding that such an alleged disclosure of the vital elements of the counts was sufficiently clear so as to enable Kemmer to make claims corresponding to the counts.

In view of the ambiguity in the counts as to the meaning of the step re-

lating to the separation of the vapor, we think the counts should be construed in the light of the patent from which they were taken. Hausman v. Hochman, 83 F.2d 703, 23 C.C.P.A., Patents, 1162; Neumair v. Malocsay, 77 F.2d 622, 22 C.C.P.A., Patents, 1349. To construe them as Kemmer wishes them construed, it is necessary to hold *that the material itself which is being heated constitutes the separating means.* There is no hint in the patent of such teaching. The counts do not call for separation of the dust from the mass to be heated but call for "separating dust from said vapor." In both forms of disclosure in Hansgirg's patent, the vapor is first removed from the material and then, in passing through screening material, which is not a part of the material from which the vapor is derived, the dust is left behind. We think the counts should be construed to mean that the removing of the dust is brought about by some means other than by the heated material itself.

However, it is our view that if the board's interpretation of the count was the proper one, we are of the opinion that it was not warranted in concluding that the vapor in passing through a briquette binding, the nature of which was not disclosed, would inherently leave the dust behind. In our view of the case it makes no difference whether the briquettes retained their form or not or whether by the heat they would be reduced to powder as was suggested by the minority member of the board. We may not conjecture, under the circumstances, that the binder, under the teachings of Kemmer, would be selected of such material as would possess such porosity or other characteristic as would bring about the desired results. If it be assumed that the binding of the briquette prevents the dust from leaving its original position in the mass of the material being heated, no separation such as is called for by the counts has taken place. This reasoning would presuppose that the process only involved separating the dust from the *material.* The counts call for *separating the dust from the vapor* and, obviously, the fair meaning of the phrase would require that the vapor, at some point before the dust was separated from it, would have an existence separate from that of the material.

For reasons stated, it is our view that the Kemmer disclosure was not sufficient to form the basis for making the counts

and that the interference should have been dissolved on the ground that Kemmer could not make the claims corresponding to the counts.

In this court, Hansgirg moved to strike certain portions of Kemmer's brief. On December 27, 1938, this court ordered certain portions of the same to be stricken and reserved decision as to items 2 and 3 pending argument on appeal. The motion of Hansgirg to strike said items 2 and 3 is denied.

The decision of the Board of Appeals is reversed.

Reversed.