33 C.C.P.A.(Patents)

**WASBERG v. DITCHFIELD.**

**DITCHFIELD v. WASBERG.**

**Patent Appeals Nos. 5158, 5159.**

Court of Customs and Patent Appeals.
May 7, 1946.

Rodney Bedell, of St. Louis, Mo. (Joseph H. Milans, of Washington, D. C., of counsel), for Wasberg.

Samuel Reese, of Cleveland, Ohio (Lee L. Townshend, of Washington, D. C., of counsel), for Ditchfield.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

These are cross-appeals in an interference proceeding from the decision of the Board of Interference Examiners awarding priority of invention of the subject matter defined by counts 1 to 4, inclusive, 7, 9, 11, 12, and 13 to appellee Wasberg in appeal No. 5159, and that defined by counts 5, 6, 8, and 10 to appellee Ditchfield in appeal No. 5158.

The interference is between Wasberg's patent No. 2,313,106, issued March 9, 1943, on an application, No. 400,234, filed June 28, 1941, and an application of Ditchfield, No. 354,709, filed August 29, 1940.

The counts originated in Wasberg's patent and were copied by Ditchfield for interference purposes.

Wasberg is the junior party and the burden was upon him to establish priority of invention by a preponderance of the evidence.

As Wasberg failed in his preliminary statement to allege a "date prior to the filing date" of Ditchfield's involved application, he was ordered to show cause why judgment on the record should not be entered against him.

In answer to the order to show cause, Wasberg moved to dissolve the interference on the ground that Ditchfield could not make the claims constituting the counts in the interference. The motion was denied by the Primary Examiner.

The party Wasberg, thereupon, moved to introduce evidence for the purpose of establishing that the device disclosed in the Ditchfield application was not constructed, and would not operate, in accordance with the structure defined by the counts in issue, and also moved that the issue be set down for hearing. Both motions were granted by the Examiner of Interferences, whereupon both parties to the interference submitted evidence on the issue presented. No other issue is involved in the case.

In this court, the party Wasberg, in appeal No. 5158, has appealed from that portion of the board's decision holding that Ditchfield could make the claims constituting counts 5, 6, 8, and 10, and, therefore, was entitled to an award of priority of invention of the subject matter defined by those counts, and, in appeal No. 5159, the party Ditchfield has appealed from that portion of the board's decision holding that he was not entitled to make the claims constituting counts 1 to 4, inclusive, 7, 9, 11, 12, and 13, and that Wasberg was entitled to an award of priority of invention of the subject matter defined by those counts.

The invention defined by the counts in issue relates to a sliding-door arrangement for railway box cars.

Counts 1 and 10 were considered typical by the board. They read:

"1. In combination, a car sliding door having a body panel and an auxiliary post with an exterior face secured to one of the upright marginal portions of said panel, said post having elements forming a pocket positioned inwardly of the car from the exterior face of the post and having a closed inner end and an open end facing towards the exterior of the door opening, and another door having an upright marginal portion movable into cooperative relation with said post to close the door opening and provided with a member overlying said pocket open end when the doors are in closed position."

"10. In combination, a pair of sliding doors movable into closed position with their adjacent edges abutting each other, each of said doors comprising a body panel and framing members at the margins thereof, the framing on the adjacent margins of the two doors including overlapping elements forming successive pockets closed from the space at the inner side of the doors, each having a relatively small opening directed outwardly from said space whereby air and matter carried thereby tending to pass from the space at the outer side of the doors to the space at the inner side of the doors is trapped, the body panels of the doors lying in the same general plane and one of the pockets resulting from the pocket forming elements being positioned inwardly of said plane and the other pocket being positioned outwardly of said plane."

Counts 5, 6, and 8, which together with count 10 were awarded Ditchfield, read:

"5. In combination, a pair of sliding doors movable edgewise into closed position with respective members on their adjacent edges abutting each other, there being elements on said edges overlapping and co-operating with said members to form successive pockets facing in opposite directions longitudinally of the doors and each having a closed inner end and sides flaring towards an open end facing towards the exterior of the door opening and baffling the admission of air and matter carried thereby to the interior of the doors.

"6. A structure as described in count 5 in which the pockets are abreast of each other transversely of the doors."

"8. In combination, a pair of sliding doors movable edgewise into closed position with respective members on their adjacent edges abutting each other, there being elements on said edges overlapping and co-operating with said members to form successive pockets, the inner end and sides of each pocket being closed from the space at the inner side of the doors and the sides of the pockets flaring towards an open end facing towards the exterior of the doors and baffling the admission of air and matter carried thereby to the space at the interior of the doors."

The Wasberg patent discloses two doors, a main door and an auxiliary door, movable horizontally into and out of engagement with each other. The auxiliary door, which is ordinarily in closed position, carries a vertical post at the edge which engages the main door. The post may be locked to the car sill. A sealing structure is provided adjacent the post which is designed to form a tight fit with the edge of the main door when the doors are in engagement. The sealing structure comprises two rigid vertical flanges which are flared in opposite directions to form a groove adapted to receive the vertical edge of the main door, so that, when the doors are closed, one flange is within the car and the other is on the outside. A flexible vertical strip is attached to the end of the flange which lies within the car and extends outwardly to a point where it engages the edge of the main door throughout its entire length when the doors are in closed position. The flexible strip is bent at its edge and the bent portion also engages the main door throughout its entire length. The flexible strip and the inner flange form a pocket, the width of the strip being such that the pocket has an open mouth which faces outwardly to trap cinders, dirt, etc., which might otherwise enter the car. When the doors are closed, the edge of the main door and the outer flange of the auxiliary door cooperate to form a second pocket which opens outwardly. It will thus be seen that there are provided two pockets, one inside the car and the other outside, both pockets opening outwardly.

The Ditchfield structure is generally quite similar to that of Wasberg and, so far as the outer pocket is concerned, there is no difference between the two which is of importance here. In the Ditchfield structure, the inner flange of the auxiliary door is bent to form a vertical channel which, when the doors are closed, extends opposite and close to, but not in contact with, the edge of the main door. One edge of flexible weather strip is secured along the bottom of the channel, the free edge of the strip extending outwardly, so that, when the doors are closed, the free edge is bent back along the edge of the main door. In the Ditchfield drawing, the free edge of the weather strip is shown as contacting the auxiliary door and completely closing the mouth of the pocket formed by the strip and the channel when the doors are closed.

It is conceded in Ditchfield's brief that all of the "counts call for the doors being *closed* or *closed and in abutment.*" (Italics quoted.)

Each of the counts is limited to a structure in which the pocket which lies within the car is open at one portion, although the language of the counts differs to some extent. Count 5, for example, which is one of the counts awarded Ditchfield, calls for each pocket "having a closed inner end and sides flaring towards an open end." Each of the involved counts contains an express limitation which must be considered as material in determining the right of each of the parties to make the claims constituting the counts in issue.

Bijur v. Rushmore, 46 App.D.C. 395, 1918 C.D. 122; Potts v. Kimball et al., 134 F.2d 327, 30 C.C.P.A., Patents, 847, and cases therein cited. Accordingly, unless Ditchfield fairly discloses an opening in the inner pocket he is not entitled to make the counts.

Ditchfield's drawing does not disclose any opening in the inner pocket, and his specification does not mention such an opening. Accordingly, he could be held entitled to make the counts only on the theory that such an opening, although neither shown nor described, is inherent in his disclosure.

Inherency requires certainty and cannot be established by possibilities or mere probabilities. See Brand v. Thomas, 96 F.2d 301, 25 C.C.P.A. Patents 1053; Hansgirg v. Kemmer, 102 F.2d 212, 26 C. C.P.A., Patents, 937; Temple v. Littlehale, 125 F.2d 730, 29 C.C.P.A., Patents, 869. It is not sufficient, therefore, that one skilled in the art, in an attempt to follow the Ditchfield disclosure, might provide an opening such as that called for by the counts in issue.

It is immaterial what Ditchfield intended to disclose in his application, or what disclosure he made to his attorney, and no weight can be given to the evidence presented by him on such matters. The issue is simply whether one skilled in the art, in constructing the device from the disclosure in Ditchfield's application, would *necessarily* provide an opening in the inner pocket.

The evidence introduced by the parties consists largely in speculation and opinion as to whether there will necessarily be an opening in the inner pocket of the Ditchfield device. It is urged here by counsel for Ditchfield that, because of practical reasons, the Ditchfield weather strip could not form a tight closure at the mouth of the pocket.

We have considered all of the evidence introduced on behalf of Ditchfield, but deem it unnecessary to discuss it here.

It is true, as held by the Board of Interference Examiners, that, although the evidence introduced by Ditchfield indicates that gaps and leakage might occur in his device, it does not establish that the inner pocket of the Ditchfield structure has an open portion within the meaning of the counts, or that his structure would inherently operate in the manner contemplated by the counts.

The weather strip in the Ditchfield structure is a sealing member and is disclosed as completely bridging the mouth of the pocket when the doors are in closed position. It was intended, so far as the Ditchfield disclosure is concerned, to effect as tight a closure as possible, and it is clear that any leakage which might take place would be merely accidental. If any such leakage occurs, it could not properly form a basis for the counts here involved. In re Ratigan, 147 F.2d 1021, 32 C.C.P.A., Patents, 904.

The Board of Interference Examiners held that Ditchfield could not make the claims constituting counts 1 to 4, inclusive, 7, 9, 11, 12, and 13, because he did not show an open-ended inner pocket, but that he could make the claims constituting counts 5, 6, 8, and 10, because they "are broader and set forth the function of the inner pocket in baffling the admission of air and matter carried thereby."

It will be observed that count 5 calls for "successive pockets," and states that each pocket has "a closed inner end and sides flaring towards an open end facing towards the exterior of the door opening." That language clearly requires that the inner pocket shall be open at its outer end. Accordingly, Ditchfield cannot make that count for the reasons hereinbefore stated. Count 6 is dependent on count 5 and contains the same limitations. Count 8 contains substantially the same language as count 5, so far as the open ends of the pockets are concerned. Count 10 calls for successive pockets "each having a relatively small opening directed outwardly" which requires an opening in the inner pocket.

We are of opinion, therefore, that the Ditchfield application does not disclose the subject matter defined by any of the counts in issue, and that the board erred

in awarding priority of invention of the subject matter defined by counts 5, 6, 8, and 10 to the party Ditchfield.

For the reasons stated, the decision of the Board of Interference Examiners is modified, being affirmed so far as it holds that the party Wasberg is entitled to an award of priority of invention of the subject matter defined by counts 1 to 4, inclusive, 7, 9, 11, 12, and 13, and reversed so far as it holds that the party Ditchfield is entitled to an award of priority of invention of the subject matter defined by counts 5, 6, 8, and 10.