SCHERING CORPORATION, Plaintiff,

v.

GENEVA PHARMACEUTICALS, INC.
and Novartis Corporation,

Teva Pharmaceuticals, USA, Inc.,

Zenith Goldline Pharmaceuticals, Inc.,

Andrx Corporation, et al.,

Mylan Pharmaceuticals, Inc.,

American Home Products, et al.,

and

Impax Laboratories, Inc., Defendants.

Nos. 98–CV–1259(JWB), 99–2237(JWB), 00–255(JWB), 99–2820(JWB), 00–1439(JWM), 00–1657(JWB), 01–279(JWB), 01–520(JWB).

United States District Court,
D. New Jersey.

Aug. 8, 2002.

Graham, Curtin & Sheridan, By: Thomas R. Curtin, George C. Jones, Janyce M. Wilson, Morristown, New Jersey, Kirkland & Ellis, By: Robert G. Krupka, Los Angeles, California, and Kirkland & Ellis, By: John M. Desmarais, Sandra A. Bresnick,

Peter J. Armenio, Maxine Y. Graham, Monica V. Bhattacharyya, Young J. Park, New York, New York, for Plaintiff Schering Corporation.

Schiff Hardin & Waite, By: Douglass C. Hochstetler, Chicago, Illinois, Marshall, Gerstein & Borun, By: Kevin M. Flowers, Ph.D., Chicago, Illinois, and Sterns & Weinroth, By: Karen A. Confoy, Trenton, New Jersey, for Defendants Geneva Pharmaceuticals, Inc. and Novartis Corp.

Finnegan, Henderson, Farabow, Garrett & Dunner, By: Robert D. Bajefsky, David A. Manspeizer, Barbara R. Rudolph, William Z. Nakhleh, Washington, D.C., and Robinson & Livelli, By: Donald A. Robinson, Newark, New Jersey, for Defendants American home Products Corp., Wyeth–Ayerst Laboratories and ESI–Lederle.

Lite DePalma Greenberg & Rivas, By: Allyn Z. Lite, Joseph J. DePalma, Stephanie M. Kay, Newark, New Jersey, and Goodwin Proctor, By: Thomas L. Creel, Frederick H. Rein, Keith A. Zullow, New York, New York, for Defendant TEVA Pharmaceuticals USA, Inc.

Harwood Lloyd, By: Frank Holahan, Hackensack, New Jersey, and Rothwell, Figg, Ernst & Manbeck, By: E. Anthony Figg, Joseph A. Hynds, Washington, D.C., for Defendant Mylan Pharmaceuticals Inc.

Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, By: James E. Cecchi, Roseland, New Jersey, and Wiley Rein & Fielding, By: James H. Wallace, Jr., Gregory R. Lyons, Mark A. Pacella, Washington, D.C., for Defendant Zenith Goldline Pharmaceuticals, Inc.

Solomon, Zauderer, Ellenhorn, Frischer & Sharp, By: Colin A. Underwood, Jonathan Lupkin, New York, New York, Hedman & Costigan, By: James V. Costigan, Martin P. Endres, New York, New York, and Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, By: Michael B. Himmel, Woodbridge, New Jersey, for Defendants Andrx Corporation, Andrx Pharmaceuticals, Inc. and Andrx Pharmaceuticals, LLC.

Saiber, Schlesinger, Satz & Goldstein, By: Arnold B. Calmann, Newark, New Jersey, Venable, and Baetjer, Howard & Civiletti, By: Julie A. Petruzzelli, Peter J. Curtin, Washington, D.C., for Defendant Impax Laboratories, Inc.

## OPINION

BISSELL, Chief Judge.

This matter comes before the Court on Plaintiff's and Defendants' motions for summary judgment on Defendants' inherent anticipation defenses with regard to Claims 1 and 3 of Schering's '716 patent. This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331.

### PROCEDURAL BACKGROUND

Plaintiff Schering Corporation is a pharmaceutical company whose several patents are at stake in this suit. Schering is the sole owner of U.S. Patent No. 4,282,233 ("the '233 Patent"), which covers a drug known as loratadine. This patent was set to expire on June 19, 2002, but Plaintiff obtained a six-month extension of protection to December 19, 2002. The '233 patent discloses the administration of loratadine, as well as many other compounds, to mammals[1] to treat allergic reactions.

---

1. Although the application does not specify 'mammals', it refers to the compound as being "useful as antihistamines, but ... preferred ... because the present compounds have little or no sedative effects, thus being preferred for use with patients that must operate machinery or automobiles or perform other mental or physical tasks requiring a high level of concentration." '233 Patent Appl. at 1. Obviously, therefore, humans are the intended recipients of these compounds, although Plaintiff argues strenuously that humans are not the *only* intended recipients of the '233 compounds.

(Def. Statement of Undisputed Material Facts in Supp. of Defendants' Mem. in Opp'n to Schering's Mot. for Summ. J. on Defendants' Inherent Anticipation Defenses and Counterclaims [hereinafter "Def. Opp'n Facts"] ¶ 3.) Plaintiff markets its loratadine product under the brand name Claritin. Plaintiff Schering is also the sole owner of the central patent at issue, U.S. Patent No. 4,659,716 ("the '716 Patent"), which covers "DCL" (DesCarboethoxylLoratadine), one of the metabolites of loratadine. During the course of its preclinical studies on loratadine, Schering identified DCL as an active metabolite of loratadine in experiments with laboratory animals and in clinical studies on humans. (*Id.* ¶ 4.) The '716 patent will expire in February 2004. It is undisputed that the '233 patent was issued more than one year before Schering filed the first application leading to the '716 patent; therefore, the '233 patent constitutes "prior art" to the '716 patent under 35 U.S.C. § 102(b).[2]

■ Defendants are pharmaceutical companies who seek to manufacture a generic version of Claritin as soon as the '233 patent's protection expires. It is well-established that use of patented inventions solely to develop a generic drug for purposes of FDA approval does not constitute an infringement of the patent. *See DuPont Merck Pharm. Co. v. Bristol–Myers Squibb Co.*, 62 F.3d 1397, 1400 (Fed.Cir. 1995) (citing 35 U.S.C.A. § 271(e)(1)). In order for a pharmaceutical company to obtain FDA approval for a drug, the company must review "The Orange Book" which lists FDA-approved drugs and patents related thereto, and then make one of the following four certifications with re-

spect to its Abbreviated New Drug Application ("ANDA"): (1) no patent information regarding the new drug sought to be approved has been filed; (2) such patent has expired; (3) the applicant will use the drug after the date on which such patent will expire; or (4) such patent is invalid or will not be infringed by the manufacture, use or sale of the new drug. 21 U.S.C. §§ 355(b)(2)(A), 355(j)(2)(A)(vii).

If a pharmaceutical company seeking to manufacture a generic drug files an ANDA with a paragraph 4 certification that the patent is "invalid or will not be infringed," the generic company must notify the patent owner of such filing and provide the factual or legal basis for the applicant's assertion that the patent is invalid or will not be infringed. 21 U.S.C. §§ 355(b)(3)(B), 355(j)(2)(B)(ii). That certification itself gives the owner of the patent a statutory cause of action under 35 U.S.C. § 271(e)(2)(A) to sue the generic company for infringement even though the generic company has not actually manufactured, used or sold the patented drug. Once the patent owner is notified, he has 45 days to file suit against the generic company for the infringement. If a suit is not filed within 45 days, the FDA may issue an approval for the generic drug. However, if a suit is filed within the allotted time, the approval may be made effective upon the expiration of a 30–month waiting period or such shorter or longer period as a court may order because either party to the action failed to reasonably cooperate in expediting the action. 21 U.S.C. §§ 355(c)(3)(C), 355(j)(4)(B)(iii). Once an FDA approval for the generic

---

2. Defendants are also challenging Plaintiff's European Patent '544 and U.S. Patent '931, but those patents are not at issue in the instant motions. The '544 patent is one of Schering's foreign counterparts to the '233 patent-in-suit and specifically discloses administration of high level loratadine to ani-

mals. The '931 patent covers Schering's process to make loratadine. There is a pending motion for summary judgment by Plaintiff with respect to this patent (AL # 10) in which Plaintiff argues that this Court lacks subject matter jurisdiction since no controversy regarding the '931 patent has yet arisen.

drug is granted, only monetary remedies are available to the patentee, and no injunctive relief shall issue.

Defendants, when they sought to manufacture the generic version of Claritin upon the expiration of the '233 patent, were made aware of the '716 patent, also listed in The Orange Book. The Orange Book listing of the '716 patent together with the '233 patent forced Defendants to select one of the above-noted certifications regarding both patents. Because Plaintiff listed the '716 patent under the Claritin ('233) entry, Defendants submitted a paragraph 4 certification. If Plaintiff had listed the patents separately, however, Defendants could have submitted a paragraph 3 certification in which they would state that they would sell or use Claritin only after the date on which the '233 patent would expire. The parties bring the instant summary judgment motions to test the validity of the '716 patent. The outcome of this decision may well determine whether the other motions in this case are moot.

### FACTS

Claim 1 of the '716 patent claims the chemical structure wherein X represents Cl or F. (Statement of Undisputed Material Facts in Supp. of Schering's Mot. for Summ. J. on Defendants' Inherent Anticipation Defenses and Counterclaims [hereinafter "Pl. Facts"] ¶ 3.) Claim 3 of the '716 patent claims the identical chemical structure as Claim 1 except that there is no X variable; the structure contains Cl and forms the compound commonly known as DCL. (*Id.* ¶¶ 4–5.) The parties agree that Claims 1 and 3 claim DCL regardless of its method of production, including both metabolic conversion of loratadine into DCL and DCL in its purified, isolated form. (Def. Opp'n Facts ¶ 17.) It is also undisputed that as of February 15, 1984, the date on which Plaintiff's '716 application was filed, one of ordinary skill in the art would not have recognized that administra-

tion of loratadine to humans necessarily results in the metabolic production of DCL. (*See, e.g.,* Second Jones Decl. Ex. 5, Benet Dep. Tr. at 95–96, 226–28; *id.* Ex. 3, Kaminsky Dep. Tr. at 298–99.) Shortly thereafter, however, that became a known, natural result.

Prior to May 1, 1987, Schering performed or sponsored 13 clinical studies in which it administered loratadine to humans and then measured the blood and/or urine levels of both loratadine and DCL. The 144 individuals in these studies included healthy male volunteers (who took loratadine with or without food), lactating females, geriatric males and females, patients with impaired kidney function, and patients with alcoholic liver disease ("ALD"). (*Id.* ¶ 5.) Researchers detected measurable amounts of DCL in each one of these 144 individuals following loratadine administration, indicating that loratadine had metabolized to DCL in each individual. The parties have produced no reports in any of the studies of any individual who did not metabolically produce DCL following the administration of loratadine. (*Id.*)

Defendants also performed or sponsored studies in which researchers administered loratadine to a total of 864 humans in 21 clinical studies and measured DCL levels. DCL was detected in all 864 humans, and there were no reports of any individual who did not metabolically produce DCL following the administration of loratadine. (*Id.* ¶ 6.) Defendants emphasize that the result of testing in a total of 34 clinical studies of 1008 humans showed that all 1008 humans metabolically produced DCL following the administration of loratadine. (*Id.* ¶ 7.) Plaintiff contends that this data may not be extrapolated to predict how *all* humans will metabolize loratadine under *all* circumstances, and that its studies on animals have allowed it to develop its cur-

rent proposed non-DCL mediated pathway for the metabolism of loratadine in humans. (Pl. Reply Facts at 5.) [3] However, from 1985 to the present, Plaintiff and its scientists have consistently characterized DCL as the "active metabolite" of loratadine in humans, a "primary metabolite" of loratadine in humans, the "major active circulating metabolite" of loratadine in humans, and a "known active metabolite" of loratadine in humans, in scientific publications and SEC filings. (Def. Opp'n Facts ¶ 10.) The FDA, the European Agency for the Evaluation of Medicinal Products, the Physician's Desk Reference and Plaintiff Schering's Claritin package insert also characterize DCL as "the major active metabolite" of loratadine. (*Id.* ¶¶ 12–15.) Further, Plaintiff indicates that patients with normal liver function who use any one of its Claritin brand products, or any of Defendants' proposed generic loratadine products, as directed, will metabolize it to produce DCL, among other metabolites. (*Id.* ¶ 16; Pl. Reply Facts at 6–7.)

## DISCUSSION

### I. *Standard for Summary Judgment*

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Federal Circuit "has repeatedly emphasized that summary judgment is as appropriate in a patent case as in any other." *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d

1557, 1561 (Fed.Cir.1988). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *Scripps Clinic & Research Foundation v. Genentech, Inc.,* 927 F.2d 1565, 1571 (Fed.Cir.1991). The moving party bears the burden of establishing that no genuine issue of material fact remains. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Supreme Court has stated that in evaluating a motion for summary judgment:

> [t]he judge must ask ... not whether ... the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmovant] on the evidence presented. The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [nonmovant] is entitled to a verdict....

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See id.*

In order to survive a motion for summary judgment, a nonmovant must pres-

---

**3.** The Court notes that Plaintiff has not presented evidence establishing a non-DCL mediated pathway for the metabolism of loratadine in humans. (*Id.*) Plaintiff's experts merely suggest potential alternative bases for disputing that certain animals other than humans metabolize loratadine to DCL. (*Id.*) Indeed,

one of the two experts upon which Plaintiff relies for this argument states only that "it is plausible that loratadine could be metabolized and excreted by humans without going through DCL." (*Id.,* citing Decl. of James MacDonald ¶ 12.) However, Plaintiff has presented no such evidence.

ent "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Scripps,* 927 F.2d at 1571 (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505). Evidence which is "merely colorable, or is not significantly probative," is insufficient to defeat a motion for summary judgment. *Id.* (citing *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505).

■ In addition, because patents are presumed valid pursuant to 35 U.S.C. § 282, a party challenging a patent's validity bears the burden of proving invalidity by clear and convincing evidence. *Robotic Vision Sys., Inc. v. View Eng'g,* 189 F.3d 1370, 1377 (Fed.Cir.1999). This heightened standard is applicable at the summary judgment stage as well as at trial. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505 ("[T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."). Thus, summary judgment in favor of the patentee is appropriate where "the nonmoving party, who bears the burden of proof at trial, fail[s] to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent." *Eli Lilly & Co. v. Barr Laboratories, Inc.,* 251 F.3d 955, 962 (Fed.Cir.2001).

## II. Claims 1 and 3 of the '716 Patent were Inherently Anticipated by the '233 Patent.

### A. Infringement

■ In order to constitute a literal infringement, an accused device or activity must literally satisfy each and every ele-

ment of the claim in question. *See Seal-Flex, Inc. v. Athletic Track & Court Constr.,* 172 F.3d 836, 842 (Fed.Cir.1999). In the instant case, the claims at issue are Claims 1 and 3 of the '716 patent. These Claims broadly cover a compound— DCL—and a pharmaceutically acceptable salt thereof. The "accused device" or "activity" is the manufacturing, use and sale of loratadine, or generic Claritin. The parties have construed Claims 1 and 3 of the '716 patent to cover DCL in any form—whether metabolized within the human body or synthetically produced in a purified and isolated form. (Def. Opp'n Facts ¶ 17.) The Court accepts this construction of those claims. Therefore, if Claims 1 and 3 of the '716 patent are found to be valid, then the manufacture, use or sale of loratadine would infringe that patent through the metabolic generation of DCL.[4]

### B. Validity—Generally

■ In the recent relevant case of *In re Omeprazole Patent Litig.,* the district court determined that "[b]y claiming patent protection for sulphenamides formed in vivo after the oral administration of omeprazole, [the patentee] has merely attempted to patent the unpatentable—'a scientific explanation for the prior art's functioning.'" *In re Omeprazole Patent Litig.,* No. MDL 1291, 2001 WL 585534, *12 (S.D.N.Y. May 31, 2001) (citing *Atlas Powder Co. v. Ireco, Inc.,* 190 F.3d 1342, 1347 (Fed.Cir.1999)). However, the court in that case read limitations from the specifications into the claim, which is generally improper. *See Doyle v. Crain Ind., Inc.,* 243 F.3d 564, 2000 WL 1608826, at *5 (Fed.Cir.2001) (citing *D.M.I., Inc. v. Deere & Co.,* 755 F.2d 1570, 1574 (Fed.Cir.1985)).

4. If Plaintiff's '716 patent covered DCL only in its pure, isolated form, there would be no question that the naturally occurring metabolic production of DCL resulting from administration of loratadine to humans would not infringe.

Although a patent is accorded a presumption of validity, and "a claim must be construed to uphold its validity if possible," (*Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744, 749 (Fed.Cir.1987)), the Court may be forced to invalidate the overly broad claims altogether rather than improperly read limitations into the claims. *See Penda Corp. v. United States*, 29 Fed. Cl. 533, 549 n. 5 (Fed.Cl.1993) (stating that it would be "illegitimate" to read a limitation into a broad claim). Plaintiff is the one who drafted Claims 1 and 3 of the '716 patent to include in vivo metabolism; therefore, their validity will be measured against that scope.

Plaintiff contends that invalidating Claims 1 and 3 of the '716 patent will undermine the purpose of the patent system by destroying an incentive for pharmaceutical companies to engage in costly research for metabolites of known drugs. Schering further claims that if the patent protects only synthetic or purified forms of a metabolite, other manufacturers could easily avoid the patent by developing prodrugs of the patented metabolite or masked compounds that exclusively produce or deliver the metabolite in the body. This policy argument is not persuasive.

Synthetically prepared or purified metabolites are still subject to patent protection through properly limited claims, if they possess new and improved properties. Those new improvements should attract customers; thus, pharmaceutical companies would still have economic incentives to research metabolites. In addition, under other patent laws, such as the equivalence doctrine, the patentee could prevent others from using or selling patented metabolites via masked compounds. Therefore, invalidating Claims 1 and 3 of the '716 patent not only does not undermine the policy of encouraging pharmaceutical progress, but also serves to encourage patentees to draft their claims narrowly to avoid over-reaching. We turn now to the question of whether these claims are invalid under the doctrine of inherent anticipation, the main battlefield for the present cross motions.

### C. Title 35 U.S.C. § 102(b) and Inherent Anticipation

■ Title 35 U.S.C. § 102(b) states where pertinent:

> A person shall be entitled to a patent unless -
>
> \*     \*     \*     \*     \*     \*
>
> (b) the invention was patented or described in a printed publication in this or a foreign country, ... more than one year prior to the date of the application for patent in the United States ...

This Court determines, as Defendants persuasively argue, that section 102(b), as applied to the undisputed material facts of this case, invalidates Claims 1 and 3 of the '716 patent. The subject of the '716 patent (DCL in either pure or metabolic form) was "described in a printed publication" (the '233 patent) "more than one year prior to the date of the application for [the '716] patent." A brief discussion of case law and scholarly treatises illuminates this ruling.

"That which would literally infringe if later in time anticipates if earlier." *Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744, 747 (Fed.Cir.1987), *quoted in Bristol–Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378 (Fed.Cir. 2001). Whether a product for which a patent is sought is inherently anticipated depends upon factors presented succinctly in *Continental Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1268–69 (Fed.Cir.1991). In analyzing a case where, like here, the patent was attacked because the product (a la DCL) was inherently produced as a

result of a prior patent ('233 in the case at bar), the Federal Circuit stated,

> To serve as an anticipation when the reference is silent about the asserted inherent characteristic, such gap in the reference may be filled with recourse to extrinsic evidence. Such evidence must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill. *In re Oelrich,* 666 F.2d 578, 581, 212 U.S.P.Q. 323, 326 (CCPA 1981) (quoting *Hansgirg v. Kemmer,* 26 C.C.P.A. 937, 102 F.2d 212, 214, 40 U.S.P.Q. 665, 667 (CCPA 1939)) provides:
>
> > Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing *may* result from a given set of circumstances is not sufficient. [Citations omitted.] If, however, the disclosure is sufficient to show that the natural result flowing from the operation as taught would result in the performance of the questioned function, it seems to be well settled that the disclosure should be regarded as sufficient.

*Continental Can Co.,* 948 F.2d at 1268–69.

In the present matter, there is no genuine issue that the consumption of loratadine by humans, with a wide variety of health statuses, necessarily results in the natural production in the human body of the DCL metabolite. Therefore, that element of the *Continental Can* test for inherent anticipation is met.

In moving for summary judgment, the defendants do not claim that this metabolic event "would be so recognized by persons of ordinary skill" in that field as of the early 1980s. Rather, they argue that such recognition and knowledge at a later point renders Claims 1 and 3 of the '716 patent inherently anticipated and thus invalid.

Plaintiffs argue, with equal vigor, that such recognition must be contemporaneous with the issuance of the patent. Defendants have the correct argument.

> The prior art disclosure need not be express in order to anticipate. Even if a prior art inventor does not recognize a function of his or her process, the process can anticipate if that function was inherent. To establish inherency, the extrinsic evidence must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill. Inherency is not necessarily. coterminous with the knowledge of those of ordinary skill in the art. Artisans of ordinary skill may not recognize the inherent characteristics or functioning of the prior art. However, the discovery of a previously unappreciated property of a prior art composition, or of a scientific explanation for the prior art's functioning, does not render the old composition patentably new to the discoverer. Insufficient prior understanding of the inherent properties of a known composition does not defeat a finding of anticipation.

Robert Harmon, *Patents and the Federal Circuit* § 3.2(b), at 88 (2001) (footnotes omitted).

■ Federal Circuit cases establish that knowledge or appreciation of that which anticipates need not be contemporaneous with the application for or issuance of the patent under scrutiny. As the Federal Circuit stated recently:

> Thus, a prior art reference may anticipate when the claim limitation or limitations not expressly found in that reference are nonetheless inherent in it. *See In re Oelrich,* 666 F.2d at 581; *Verdegaal Bros., Inc. v. Union Oil Co. of Cal.,* 814 F.2d

628, 630, 2 USPQ 2d 1051, 1053 (Fed.Cir.1987). Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates. *See In re King,* 801 F.2d 1324, 1326, 231 USPQ 136, 138 (Fed.Cir.1986). Inherency is not necessarily coterminous with the knowledge of those of ordinary skill in the art. Artisans of ordinary skill may not recognize the inherent characteristics or functioning of the prior art. *See id.,* 801 F.2d at 1326.

*MEHL/Biophile International Corp. v. Milgraum, M.D.,* 192 F.3d 1362, 1365 (Fed.Cir.1999). As noted from the references in *MEHL,* this is not a new doctrine. *See also Titanium Metals Corp. v. Banner,* 778 F.2d 775 (Fed.Cir.1985). More recent and extensive treatments of this significant feature of the doctrine of inherent anticipation are found in *EMI Group North America, Inc. v. Cypress Semiconductor Corp.,* 268 F.3d 1342 (Fed. Cir. 2001), and *Atlas Powder Co. v. Ireco Inc.,* 190 F.3d 1342 (Fed.Cir.1999):

> Inherency is not necessarily coterminous with the knowledge of those or ordinary skill in the art.... Artisans of ordinary skill may not recognize the inherent characteristics or functioning of the prior art.... However, the discovery of a previously unappreciated property of a prior art composition, or of a scientific explanation for the prior art's functioning does not render the old composition patentably new to the discoverer.

(*Id.* at 1347) (citations omitted). In the case before it, the *Atlas* court later determined that "the assertion [at issue] amounts to no more than a claim to the discovery of an inherent property of the prior art, not the addition of a novel element. Insufficient understanding of the inherent properties of a known composition does not defeat a finding of anticipation." (*Id.* at 1349).

In the case at bar, the natural, inevitable production of metabolic DCL upon human ingestion of loratadine, although not fully appreciated by persons of ordinary skill in that field until more recently than 1984, demonstrates that this process is an "inherent characteristic or functioning" of the use of loratadine, the subject of the '233 patent. Therefore, that patent inherently anticipates Claims 1 and 3 of the '716 patent, rendering them invalid.[5]

## CONCLUSION

For the reasons set forth above, the defendants' motions for summary judgment declaring that Claims 1 and 3 of patent number 4,659,716 are invalid is granted. Plaintiff's motion for a declaration that those Claims are valid and infringed is denied.

## ORDER

For the reasons set forth in this Court's Opinion filed herewith,

It is on this 8th day of August, 2002,

**ORDERED** that the Defendants' motions for summary judgment declaring that Claims 1 and 3 of patent number 4,659,716 are invalid is hereby granted; and it is further

---

**5.** This Court has not ignored other arguments and citations which plaintiff has presented. In particular, the Court has considered two Board opinions regarding metabolites which plaintiff urges are persuasive. *Ex parte Mayol,* Appeal No. 586–35 on Serial No. 325,166 (B.P.A.I.1985); *Ex parte Biel,* Appeal No. 223–47 on Serial No. 62,564 (B.P.A.1964). Those rulings, however, are not consistent with the Federal Circuit law discussed above; therefore, the Court has declined to follow them.

**ORDERED** that Plaintiff's motion for a declaration that those Claims are valid and infringed is hereby denied.