Hugh Cecil **BINSTEAD** and Henry James Stockwell, Appellants,

v.

Hans **LITTMANN** and Bruno Müller, Appellees.

Patent Appeal No. 6240.

United States Court of Customs and Patent Appeals.

March 29, 1957.

Amasa M. Holcombe, Washington, D. C. (Joseph F. Brisebois, Washington, D. C., of counsel), for appellants.

Mason, Kolehmainen, Rathburn & Wyss and Walther E. Wyss, Chicago, Ill., for appellees.

Before JOHNSON, Chief Judge, and WORLEY, RICH and JACKSON, retired, Judges.

JOHNSON, Chief Judge.

This is an appeal from the decision of the Board of Patent Interferences of the United States Patent Office awarding priority of invention, as claimed in the single count hereinafter set forth, to the junior party.

Involved in this interference are applications No. 140,104, filed January 23, 1950, by Hugh Cecil Binstead and Henry James Stockwell (hereinafter referred to as Binstead) and No. 155,136, filed April 11, 1950 by Hans Littmann

and Brüno Müller (hereinafter referred to as Littmann). Littmann being the junior party and the applications being co-pending, Littmann has the burden of proving his case by a preponderance of evidence.

The single count in issue reads as follows:

"In an ophthalmic apparatus of the character described having a base, a head rest on said base, a pivotally mounted illuminating device and a pivotally mounted observation microscope device adapted for observing the cornea and interior and posterior sections of the eye to be examined, an arm carrying said illuminating device, and another arm carrying said microscope device, both arms being disposed on said base rotatable about a common vertical axis traversing the head rest at the locus at which the pupil of the eye to be examined is to be located, said pivoted illuminating device containing in a vertically arranged housing a light source and optical means comprising lenses and reflecting means for projecting light from said source in substantially horizontal direction onto the eye to be examined, said pivoted microscope having objective and eyepiece lenses, the distance between said locus of observation and said illuminating device being shorter than the distance between said locus and said microscope device, and both said devices being constructed and disposed on the respective arms to obtain sufficient spatial distance between each other in all operative positions of the illuminating device and the microscope device including the special operative position where the illumination and observation directions coincide."

The invention relates to optical apparatus of the kind commonly known as a "slit lamp," for microscopic examination of the human eye under illumination. To avoid prior art difficulties whereby the arc of movement of the microscope was limited by the obstruction in its path created by the presence of the illuminating device, the instant apparatus is so constructed that the illuminating and microscope devices are each individually supported by distinct arms, each separately rotatable about a common vertical axis coincident with the eye to be examined. The distance between the illuminating device and the axis of rotation is shorter than that between the microscope and said axis to enable the microscope to be swung in an arc free from obstruction by the illuminating device. The objective of the illuminating device is so constructed (Littmann utilizes a prism whereas Binstead uses a partially transparent reflector) as to permit use of the apparatus in the position in which the illumination and observation directions coincide.

Both parties reside and made their inventions abroad, and each claims the benefit of a foreign application to establish priority of invention.

The party Littmann relies upon a patent application (p 53980 IXa/42 h D) filed in Germany on September 5, 1949. In the Patent Office, Binstead moved to dissolve the interference on the ground that neither the domestic nor foreign applications of Littmann contained disclosure adequate to support the here involved count. This motion was denied, the board finding that each of the applications supported the count, and the date of September 5, 1949, was accordingly granted to Littmann for conception and constructive reduction to practice of the invention. Binstead assigned as error in his reasons of appeal this action by the board, but neither in his brief nor in oral argument was the point vigorously asserted. In the view we take of this case, it will be unnecessary to decide the question raised by this point.

The priority papers filed by Binstead include a provisional specification and a complete specification with drawings, both specifications having been filed in connection with the application for British patent No. 2,033 of 1949. The

board held, and Littmann concedes, that Binstead is entitled to the benefit of the filing date, January 19, 1950, of his complete British specification. Binstead was accordingly granted that date by the board for conception and reduction to practice of the invention. Littmann having established an earlier date, however, (and we will assume for purposes of this decision that Littmann is entitled to said date) Binstead attempted before the board to gain the benefit of the date of the provisional specification, which date is January 25, 1949.

The board was of the opinion that the provisional specification failed to disclose "an arm carrying said illuminating device" or a "base," both of which are recited as positive elements in the count. The board was further of the opinion that " * * * the count recites the head rest and the arms as being 'on said base', and 'on' has been held to require a particular relationship * * *."

In addition to the lack of disclosure of the provisional specification found by the board, Littmann here asserts that there is not adequate disclosure in the provisional specification to support the portion of the count relating to the "special operative position where the illumination and observation directions coincide" (the last full phrase in the count).

As to the foregoing argument of Littmann, Binstead contends that "only such points as were ruled on by the board adversely to appellants need be considered by this court" and that therefore Littmann's argument may not be here considered, citing Bergstrom and Trobeck v. Tomlinson, 220 F.2d 766, 42 C.C.P.A., Patents, 852 (incorrectly cited by Binstead as Olaf, Bergstrom & Tobrek v. Tomlinson & Tomlinson). For purposes of this decision we will assume, without deciding, that we may here consider the argument advanced by Littmann.

The issue before us, therefore, is whether or not the provisional specification of Binstead's British application contains disclosure adequate to support the here involved count.

We are of the opinion that it does and that, therefore, the party Binstead must be awarded priority of invention.

Considering at the outset the alleged lack of disclosure in the provisional specification of an "arm" which carries the illuminating device, Littmann places great emphasis on a statement in said specification that "The illuminating device comprises a lamp housing *directly* carried on the inner sleeve." (Emphasis added.) He concludes that this statement, short of evidencing the disclosure of an "arm," is positive evidence of the lack of such disclosure. A careful and reasonable reading of the specification in its entirety, however, clearly indicates the contrary.

The specification states:

"The apparatus according to the invention comprises a rest for locating the eye to be examined at the object position, a microscope for observing the object position mounted on a bracket *rotatable about an axis approximately aligned on the object position* the optical axis of the microscope being approximately at right angles to such axis of rotation, and means for illuminating the object position *also rotatable about such axis of rotation* and including an aperture, a source of light for illuminating the aperture and an objective for focussing an image of the aperture on the object position, *the optical axis of such objective being approximately parallel to the axis of rotation * * *."
(Emphasis added.)

It is thus clear that the illuminating device is rotatable about an axis of rotation approximately coincident with the object position (the patient's eye) and the optical axis of the objective of said device is *parallel* to said axis of rotation. It is difficult to see how, if we are to adopt Littmann's and the board's reasoning as to the significance of the expression "directly carried on the inner sleeve," we can reconcile such reasoning with the foregoing portion of the specification. Unless the definition of the word

"parallel" is to be distorted, it is clear that what is meant by the disclosure is that the illuminating device is off set from the axis of rotation, such off setting, of course, necessitating the use of an arm as recited in the count.

We take judicial notice, as well, of the fact that for apparatus such as is here involved to be of any practical use, the illuminating device must be capable of movement through various positions across the patient's eyes. How, if the construction advanced by Littmann is accepted, could said device be moved across the patient's eyes, in view of the fact that the sleeve to which the illuminating device is "directly attached" is, as disclosed in the specification, located "vertically beneath [the] object position"?

The recitation in the count of a "base" and of the particular relationships of the various elements of the apparatus with respect to the base is, we feel, also supported by the disclosure of the provisional specification. That the provisional specification contains a disclosure relating to a unitary device cannot be questioned. In a presentation of the preferred construction of this device, the specification states:

> " * * * a suitably shaped rest is provided for the patient's head, so that the eye to be examined may be located properly in the object position of the apparatus. *Vertically beneath* this object position, a *vertical spindle carries two concentric* sleeves, the inner of which projects above the outer and carries the illuminating device. The outer sleeve, which projects below the inner sleeve, carries a bracket on which the microscope is mounted. * * * " (Emphasis added.)

It is seen from the foregoing that both the illuminating device and the microscope are supported by concentric sleeves which themselves are supported by a single vertical spindle. The spindle itself is located "vertically beneath" the object position, viz.—the head rest. Granted, there is no *express* disclosure

in the provisional specification of a "base" *per se*, but unquestionably, the apparatus described therein, constituting a unitary whole as we have said, *must* be supported in some suitable manner, unless we are to conclude that the vertical spindle, which, as disclosed, is the immediate support for the elements appended thereto, is itself self-supporting (a conclusion which is clearly untenable). It is to be noted that the vertical spindle is located "vertically beneath" the object position. If, as counsel for Littmann intimated in oral argument, the structure here involved might conceivably be supported from a wall or even from the ceiling, why would the vertical spindle be located *beneath* the object position? The very nature of the apparatus, in conjunction with the disclosure of the relative positions of the object position and the vertical spindle, clearly show that a base support is to be used to support said apparatus. It is equally clear that the head rest, located vertically above the vertical spindle, is interconnected with and supported by the same base which supports the spindle and the other elements of the apparatus. In an apparatus of this nature, it is essential that the patient's eyes be in a fixed and stationary position relative to the microscope and the illuminating device. Were the head rest supported by anything other than the base on which the other elements of the apparatus were supported, this fixed relationship could not be maintained. It would not amount to speculation or conjecture on our part to conclude that the rather positive and clear recitation in the provisional specification supports such a conclusion. We are convinced that one skilled in the art, to whom this specification is addressed, would *necessarily* be led to the conclusions we have reached. Such is the only *reasonable* construction which can be given the words used.

It is true, as was stated in Brand v. Thomas, 96 F.2d 301, 303, 25 C.C.P.A., Patents, 1053, that:

> " * * * Lack of clear disclosure is not supplied by a speculation as

to what one skilled in the art might do or might not do if he followed the teaching of the inventor. The disclosure should be clearer than to suggest that one skilled in the art *might* construct the device in a particular manner. * * *" (Italics quoted.)

This is not to say, however, that each limitation in an interference count must be expressly set forth *in haec verba* in the disclosure relied upon. It is sufficient if, as in this case, the specification is so worded that the *necessary and only reasonable* construction to be given the disclosure by one skilled in the art is one which will lend clear support to each positive limitation in the interference count.

Littmann further asserts that the last full phrase of the count, concerning the "special operative position where the illumination and observation directions coincide," is not supported by adequate disclosure in the provisional specification.

Binstead relies on two statements in the provisional specification to support this portion of the count, which statements read as follows:

"* * * If the clearance between the end of the microscope and the patient's face is sufficient, the small reflector may, if desired, be made partially transparent and may intercept the optical axis of the microscope (or the plane of movement thereof) *so as to permit the* axis of the illuminating pencil to be made coincident with the optical axis of the microscope if required.

* * * * *

"If there is sufficient space between the end of the microscope and the patient's face, the reflector may be mounted in this space, in which case of course it must be made partially transparent in order to permit the viewing rays to pass to the microscope. This modification will permit the axis of illumination to be coincident with the viewing axis, but necessarily involves some loss of light."

Littmann claims that these two statements fall short of supporting the limitations of the count, and cites Hansgirg v. Kemmer, 102 F.2d 212, 26 C.C.P.A., Patents, 937, and Interchemical Corporation v. Watson, D.C.D.C.1956, 145 F. Supp. 179, as controlling the issue.

The Hansgirg case involved the right to make the count of the senior party in the there involved interference. The count called for a process of making highly refined magnesium through distillation of metallic magnesium and included a step of separating dust from the magnesium vapor which was formed. The senior party relied on a statement in his disclosure to the effect that the magnesium to be distilled might be subjected to the distillation treatment in the form of briquettes " 'with or without a binder'." [102 F.2d 213] It was contended by the senior party that this binder would act as a screen which, when the vapors passed therethrough, would filter out the dust from the vapor.

The court noted that the screening would take place only if porous binders were used and that the disclosure made no mention of whether or not the binder was to be made of a porous material or *of any particular material which would* perform the function of screening.

The court stated:

"* * * It is remotely possible that some kind of screen or binding might be placed around the briquette which would, to some extent, perform the function that Kemmer and the board now claim for it, but it is not sufficient, under the above-stated, well-settled principles, to say that a binder *might* be selected which *might* do a certain thing. It would seem to us that we would be wholly unjustified in holding that such an alleged disclosure of the vital elements of the counts was sufficiently clear so as to enable Kemmer to make claims corresponding to the counts." (Emphasis quoted.)

The Interchemical case, supra, in which the Court cited the Hansgirg decision with approval, is merely cumulative and need not be elaborated upon.

We are of the opinion that the two statements in the provisional specification relied upon by Binstead are not of the nature of the disclosure relied upon by the senior party in the Hansgirg case and that, therefore, that case is not here controlling. Though these statements contain several "if's" and "may's," it is evident that the feature of the invention there discussed is not a possibility or a probability depending upon chance selection by the person skilled in the art. In the Hansgirg case, if briquettes were used instead of powdered magnesium and if, by chance, the proper type of binder were chosen (note: the proper type was not disclosed), the binder would act as a screen. Here, the phrase "If there is sufficient space between the end of the microscope and the patient's face" does not mean that there may or may not be sufficient space, depending upon fortuitous circumstances; what is meant is that if the user of the apparatus provides sufficient space (there being no impediment here to preclude him from so doing) then the axis of illumination may be made coincident with the viewing axis ("may" is used synonymously with "can"). Note the last sentence in the second of the two quoted statements from the provisional specification:

"* * * This modification *will* permit the axis of illumination to be coincident with the viewing axis, but necessarily involves some loss of light." (Emphasis added.)

We are convinced that the foregoing statements relied upon by Binstead present an optional modification which supports the last full phrase of the count.

Binstead, therefore, has a right to rely upon the provisional specification for conception and reduction to practice of the invention defined in the count. The filing date of this specification being earlier than Littmann's earliest established date, Binstead is entitled to an award of priority.

In the view we have taken of this case, it is unnecessary to consider the other questions raised on appeal.

The decision of the Board of Patent Interferences is accordingly reversed.

Reversed.

By reason of illness, O'CONNELL, Judge, was not present at the argument of this case and did not participate in the decision.

JACKSON, Judge, retired, recalled to participate herein in place of COLE, Judge, absent because of illness.