54 CCPA

Fred A. KROHM, Appellant,

v.

John R. OISHEI, Appellee.

Patent Appeal No. 7624.

United States Court of Customs
and Patent Appeals.

March 16, 1967.

Rehearing Denied May 4, 1967.

Kenneth E. Walden, Washington, D. C.,
Richard R. Trexler, Chicago, Ill., for ap-
pellant.

E. Herbert Liss, Buffalo, N. Y., for
appellee.

Before WORLEY, Chief Judge, and
RICH, MARTIN, SMITH, and AL-
MOND, Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Patent Interferences awarding priority in Interference No. 91,639 to Oishei, the senior party by reason of the February 14, 1955, filing date of his application.[1] The junior party Krohm is involved on an application filed July 1, 1960,[2] which is a continuation-in-part of certain earlier applications including Serial No. 411,470, filed February 19, 1954, prior to Oishei's filing date.

The first issue, decided adversely to Krohm by the board, is whether Krohm is entitled to the benefit of the filing date of that application, hereinafter the 1954 application, for the single count in controversy. A second issue, whether certain activities of Krohm prior to Oishei's filing date amounted to an actual reduction to practice, was also decided adversely to Krohm.

 Oishei is restricted to his filing date since he did not introduce evidence of prior activities.

The interference relates to a construction for securing a windshield wiper arm on an oscillating driving shaft in such manner that the rotary position of the arm on the shaft may be adjusted to cause the wiper blade to clean the desired segment of the windshield. The count reads:

4. A windshield wiper arm mounting construction comprising a wiper arm having a mounting head, said mounting head including means defining a clutch chamber having a smooth generally cylindrical inner peripheral wall and an end wall having an opening therethrough, a clamping member including a portion located exteriorly of said end wall and said portion being of a size exceeding the size of said opening, a drive shaft having a portion adapted to fit within said clutch chamber, means adapted to threadably fasten said clamping member to said drive shaft, a plurality of wedge members in said clutch chamber surrounding said drive shaft, means included in the structure constituting said end wall and clamping member operable to engage first portions of said wedge members, shoulder means on said shaft tapered toward said clamping means and adapted to engage second portions of said wedge members adjacent the inner extremities thereof, whereby the threading of said clamping member on said drive shaft causes the relative axial movement between said clamping member and said drive shaft to be converted into a substantially radially directed movement of said wedge members outwardly into clutching engagement with said cylindrical peripheral inner wall and said clamping member preventing separation of said mounting head from said drive shaft while said clamping member and drive shaft remain threadably fastened.

The Oishei construction on which the count concededly reads is best understood through reference to the following figure of the drawing:

*Fig. 3*

In the figure, 4 designates an oscillating shaft to which is secured a mounting head 10 carrying the wiper arm to which the windshield wiper blade is attached. The shaft 4 is provided with a serrated conical shoulder 8 and extends through a hollow portion of the mounting head in which is disposed a cylindrical member having an inner peripheral clutch surface 25. Extending through an opening in the upper end of the mounting head

---

1. Serial No. 487,964.

2. Serial No. 40,276.

is a nut 15 having a portion within the head engaging screw threads on the upper end of the shaft 4 and a shoulder outside the head. A conical surface is provided at the lower end of the nut. The clutch is completed by three shoes or jaws 12 arranged about the shaft 4 within the cylindrical clutch member. The lower and upper inner peripheral edges of the shoes are provided with beveled seats complimentary with the conical portions of the shaft and nut, respectively. As a result, tightening of the nut on the shaft causes the conical surfaces of the shaft and nut to wedge the outer peripheral surface of the shoes into frictional engagement with the inner peripheral surface of the cylindrical clutch member to secure the head in a selected position on the shaft.

The structure disclosed in the Krohm 1954 application is illustrated in Figs. 2, 4 and 6 as follows:

Fig-2

Fig.-6

Fig.-4

Here, an oscillating shaft 6 includes a serrated tapered portion 8 and a threaded end 9. A wiper arm, having an inner section with a base 10 to which is attached an outer portion 2 adapted to carry the wiper blade, is mounted on the shaft through a clutch means adjustable to such position that the arm is oscillated across the desired portion of the windshield. The arm portion 10 has an inverted cup 4 secured to its upper side and aligned openings are provided in the two elements for passage of the shaft 8. In the form of Fig. 2, a disc-shaped clutch member 5 having a single radial slot 23 therein is disposed in the cup and provided with a central aperture 21 through which the shaft extends. A nut 7 is threaded on the end 9 of the shaft so that, after the arm with its part 10 is adjusted to the desired rotary position on the shaft, the nut may be tightened to cause the clutch disc to engage the inner periphery of the cup to secure the parts together.

Fig. 6 shows a modification wherein the clutch disc is made up of two separate semi-circular portions.

Krohm asserts that the modified form of Fig. 6 inherently supports the count. The board held to the contrary, finding that the disclosure does not meet the portion of the count reading:

> means included in the structure constituting said end wall and clamping member operable to engage first portions of said wedge members.

The board was of the view that engagement of the end wall with the disc or wedge members is not disclosed in the 1954 Krohm application, it being conceded that the "clamping member," or nut, is not disclosed as contacting such members.

More specifically, the board held that the disclosure of Figs. 1 to 4 does not teach engagement of the disc member with the end wall "in a clear manner" and that the relationship of the Fig. 6 teaching to the Fig. 4 teaching is not such that "the person skilled in the art would necessarily be taught to construct the parts to effect such engagement, in adopting the construction of Figure 6."

We are unable to agree with the board's position.

It is true that the 1954 Krohm application does not state, in so many words, that the disc clutch members of Figs. 2 and 6 engage the end wall of the cup portion of the clutch. However, we think that the structure shown and the operation described in the application necessarily requires that such engagement take place.

The application states:

* * * The setup is such that when the nut is loosened the arm may be freely adjusted to any rotative position desired with respect to the longitudinal axis of the shaft and then firmly secured in position by merely tightening the nut. More specifically in this regard, when axial pressure is exerted on the disc means through the nut the means will be caused to grip the shaft and expand radially so that the periphery of the disc will forcibly engage or bite into the wall of the cup.

Also, a typical original claim in the application reads:

> 3. Structure of the kind described adapted for attachment to a shaft having a tapered serrated portion and a threaded portion, said structure comprising a support provided with a cylindrical formation constituting a first clutch, yieldable means disposed in the formation and constituting a second clutch, *said yieldable means being normally freely rotatable in said formation,* an aperture provided in the second clutch and an opening provided in the support through which the shaft can be extended, and a nut for engaging the threaded portion of the shaft, the arrangement being such that when the structure is applied to a shaft and the nut is tightened on the threaded portion of the shaft, the second clutch will be compressed to grip the serrated portion of the shaft and forcibly engage the inner surface of the formation to obtain firm securement of the structure to the shaft. (Emphasis supplied)

Original claim 2 is more explicit with regard to the cup, stating that it has a "cylindrical wall" and that tightening the nut causes the disc means to forcibly engage "the inner surface of the cylindrical wall of the cup in a manner to firmly secure the structure against rotation on the shaft."

Thus, the "yieldable means" (claim 3) or "disc means" (claim 2) normally is "freely rotatable" in the "cylindrical formation" or "cup" and the latter, having a cylindrical rather than a tapered wall, has the same internal diameter throughout its length. The disc means will therefore remain "freely rotatable" in the cup until it is brought into contact with the base of the cup and compressed throughout to expand outwardly as a result of continued axial movement of the tapered shaft brought about by further tightening of the nut. Such operation

is in conformity with the drawings which show the inner clutch member in engagement with the base. If the structure were to operate in some different way whereby the inner clutch member engaged the peripheral wall of the cup at a location spaced from the base to provide a wedging action, that could have been made clear by a showing in the drawing or a description, or both. As it is, it is not apparent how such operation can result where the cup portion of the clutch is cylindrical and the inner or disc portion is normally freely rotatable therein.

The portion of the application most strongly relied on by the board in reaching its conclusion states:

> \* \* \* Attention is directed to the important fact that the disc is constructed and arranged so that its fingers will engage the side wall of the cup at a location close to the base wall of the cup and thereby alleviate any tendency of the side wall to spread when the disc is under tension.

We regard that statement as no more than assertion of an advantage of the construction. It seems entirely appropriate to describe the engagement of the disc with the side wall as "at a location close to the base wall" even though the disc actually contacts the base of the cup. The disc has tangible thickness and there is no assurance that its contact with the side wall of the cup would be along its entire outer peripheral surface or at the exact plane of intersection of the side and end walls of the cup. Consistent with the application disclosure, it seems to us that the concavo-convex configuration of the disc shown in Fig. 4 would necessarily result in the upper edge of the peripheral surface of the disc meeting the base surface of the cup before the periphery contacts the side wall of the cup close to the base wall.

No different mode of operation is discussed in the description of Fig. 6 and no basis is found in the structure for concluding that any material difference exists so far as the present issue is concerned.

 The test applicable here is well stated in Binstead v. Littmann, 242 F.2d 766, 44 CCPA 839. There the court acknowledged the statement in Brand v. Thomas, 96 F.2d 301, 25 CCPA 1053, that:

> \* \* \* Lack of clear disclosure is not supplied by a speculation as to what one skilled in the art might do or might not do if he followed the teaching of the inventor. The disclosure should be clearer than to suggest that one skilled in the art *might* construct the device in a particular manner. \* \* \*

Concerning that proposition, it stated:

> This is not to say, however, that each limitation in an interference count must be expressly set forth *in haec verba* in the disclosure relied upon. It is sufficient if, as in this case, the specification is so worded that the *necessary and only reasonable* construction to be given the disclosure by one skilled in the art is one which will lend clear support to each positive limitation in the interference count.

██ Since the original claims in the 1954 Krohm application are a part of the disclosure, we are satisfied that the necessary and only reasonable construction to be given the disclosure is one wherein it discloses the subject matter of the count limitation in issue. The board seems to have erred in requiring in effect that the limitation in question be set out *in haec verba*, contrary to Binstead v. Littmann.

Another consideration reinforces our conclusion. The board concedes, and Oishei does not expressly deny, that the limitation in question is met by the embodiments of Krohm's Figs. 7 to 11 and 12 to 17. The embodiment of Figs. 7 to 11, first disclosed in an application filed after Oishei's filing date, differs from the embodiments of the 1954 Krohm application principally in the disc or clutch

member being in three or four segments rather than one or two pieces, and in the provision of a retaining ring for the segments. We do not see that the differences between the Fig. 6 form of the 1954 application and the form of Figs. 7 to 11 of the later application would cause any different operation relative to contact with the cup base. Moreover, the application first disclosing the Figs. 7 to 11 form includes precisely the same statement relative to the disc engaging the side wall at a location close to the base wall as previously quoted from the 1954 application, so heavily relied on by the board and Oishei as demonstrating absence of base wall contact in the structure of the latter application.

Since we find that the 1954 Krohm application inherently supports the count, Krohm must prevail on his constructive reduction to practice on his filing date. Thus, whether Krohm's activities prior to Oishei's filing date amounted to an actual reduction to practice is moot.

The decision is reversed.

Reversed.

MARTIN, J., participated in the hearing of this case but died before a decision was reached.