56 CCPA

**Derek Norman STEVENS, Appellant,**

v.

**Hermann SCHMID and Emil Kirbach, Appellees.**

Patent Appeal No. 8056.

United States Court of Customs and Patent Appeals.

Feb. 13, 1969.

Hugh H. Drake, Fort Collins, Colo., Donald P. Selvecki, Detroit, Mich. (George E. Frost, Warren E. Finken, Detroit, Mich., Frank J. Soucek, Washington, D. C., of counsel) for appellant.

Paul M. Craig, Jr., Craig & Antonelli, Washington, D. C., for appellees.

Before WORLEY, Chief Judge, and RICH, ALMOND and BALDWIN, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Patent Interferences, awarding priority to Schmid et al., in interference No. 93,461, involving Schmid et al. (hereinafter "Schmid") application serial No. 756,200, filed August 20, 1958, entitled "Windshield Wiper Arrangement" and Stevens application serial No. 732,890, filed May 5, 1958, entitled "Windscreen Wiper Systems." [1]

The invention relates to windshield wiper systems such as those used on ordinary passenger automobiles. The single count of the interference reads:

1. A wiper system for a windscreen including, a pair of wiper blades, said wiper blades being oscillatable through strokes having overlapping paths over a portion of said windscreen, means for imparting conjoint oscillation to said wiper blades *in phase opposition* and for precluding interference between said wiper blades during movement through their overlapping paths. [Emphasis ours.]

1. The real parties in interest are Daimler-Benz Aktiengesellschaft, Stuttgart-Untertuerkheim, Germany, as assignee of Schmid and General Motors Corporation as assignee of Stevens.

This count language can be most easily understood by reference to Figure 1 of Stevens' U. S. application:

*FIG.I.*

---

A pair of wiper blades 28 and 32 cooperating with a windshield 1 are oscillatable through strokes having overlapping paths, the region A swept by blade 28 overlapping, toward its left end, the right side of region C swept by blade 32. Blades 28 and 32 are driven by means including elements 6 and 10, respectively, so that the blades sweep back and forth *"in phase opposition."* That is, during one half-cycle, the blades move generally towards one another and during the next half-cycle, away from one another. This type of oscillation may be contrasted to the "in phase" movement of blades 28 and 30 which move generally back and forth in unison.

Neither party took testimony, both parties relying on their respective for-

eign applications, the U. S. applications having been filed within the convention year. Schmid claimed, and was granted by the board, the benefit of the filing date of German application No. D 26304 II/63c, filed August 27, 1957, and was made senior party on that basis. Stevens claimed, but was *not* granted, the benefit of the filing date of British Provisional Specification No. 14,902/57, filed May 10, 1957 (hereinafter "British Specification").

The sole issue is whether or not Stevens' British Specification discloses support for the count;[2] if it does, Stevens must prevail because that application was filed before Schmid's German application. That the British Specification discloses "a pair of wiper blades

**2.** Prior to the Brief for Appellant in this court, Stevens in no way questioned Schmid's right to the benefit of his German filing date. Now, however, Stevens notes that there is an error in the translator's affidavit filed with the translation of the certified German application and an error in the *translation* of the German

Patent Office certificate. These errors, Stevens says, are fatal to Schmid's claim of priority since the time in which a correct "sworn translation" should have been filed has already expired. Suffice it to say that this is not one of the extraordinary circumstances in which we will consider issues not raised below.

\* \* \* oscillatable through strokes having overlapping paths" over a portion of a windshield, is not disputed. Whether or not the British Specification supports the count depends on whether it discloses "means for imparting conjoint oscillation to said wiper blades in phase opposition," as distinguished from oscillation in tandem or "in phase." The board held it does not and we agree.

█ Appellant tries to find the necessary disclosure by deduction from, what appears in the British Specification drawings, Figures 1 and 2. The only description of these drawings reads:

> The accompanying informal drawings illustrate diagrammatically a windscreen wiper system according to the invention arranged for use on a wrap-around screen, Figure 1 being the elevation of the windscreen with the wiper blades and arms arranged at the top of the windscreen, and Figure 2 being the perspective view of the same windscreen.

Stevens concedes that the British Specification does not disclose, *in haec verba*, that two of the wiper blades move in phase opposition, but contends that the "necessary and only reasonable construction"[3] to be given the drawings and specification by one of ordinary skill in the art is that phase opposition was intended. Treating the drawings first, the board said:

> Both figures show three "wiper arm pivots" indicated by crossed lines, but neither figure shows any means for operating the pivots. In Figure 1 no structural part is shown extending from the pivots. Figure 2, however, shows full lines extending from the pivots, obviously indicating the wiper blade arms extending therefrom; and

all three wiper blade arms are shown in a terminal position towards the left of the figure, positions they would occupy if they were arranged to operate *in phase* with each other. In the case of two of the pivots in Figure 2 the other terminal position of the corresponding blade is shown, with the position of the wiper blade arms shown by dashed lines. Those two dashed lines extend from their pivot towards the right of the figure, and the wiper arms they represent could only be so shown if they were arranged to be operated in phase with each other. Thus the drawings \* \* explicitly disclose that the wiper arms operate in phase with each other. [Emphasis ours.]

The only comment which Stevens makes in regard to this finding of the board is that "Appellant contends that those lines merely represent limits of wiper arm movement, one form for the left and another for the right." We are of the opinion that the board's interpretation of the Figures is the necessary and only reasonable one.

█ Stevens also relies on the statement in the British Specification that

> The auxiliary wiper arms and blades are each arranged for oscillation throughout arcs of substantially 90° between *a substantially horizontal and a substantially vertical position*, and their paths of movement partially overlap portions of that of the main wiper arm and blade which is arranged for oscillation throughout a greater arc. [Emphasis ours.]

According to Stevens, this necessarily means that the *auxiliary* blades move simultaneously from the horizontal to the vertical and thus in phase opposition,[4]

3. Krohm v. Oishei, 373 F.2d 992, 54 CCPA 1260; Binstead v. Littmann, 242 F.2d 766, 44 CCPA 839.

4. Stevens reasons:
   Had in-phase operation of the two auxiliary blades been meant, then one

of those blades would have been described as oscillating between a substantially horizontal and a substantially vertical position while the other oscillated between a substantially vertical position and a substantially horizontal position.

and that this in turn must mean that *one* of the auxiliary blades is in phase opposition with the center blade. Stevens' interpretation appears to be, as appellee says, "a hindsight approach prompted by the exigencies of the situation." At best, it is not the necessary and only reasonable interpretation, for, as we read the above-quoted sentence, it merely describes the arcs that are wiped by the auxiliary blades and such a description is equally correct whether these blades are actuated in phase or in phase opposition. Moreover, the sentence immediately following that just referred to is explanatory and reads:

> *Thus* the auxiliary wiper arms and blades may each operate over an arcuate region which extends from near a side edge of the windscreen to near the upper (or lower) edge thereof; and the main arm and blade may operate over a central arcuate region' each end of which overlaps that end of the arcuate region of an auxiliary blade which is adjacent the upper (or lower) edge of the windscreen, the auxiliary arms and blades moving through arcs of substantially 90° and the main arm and blade through an arc of, say, 140°. [Emphasis ours.]

This leaves no doubt that the disclosure relied upon by Stevens is only descriptive of the areas wiped by the three windshield wiper blades and does not suggest the type of actuation to be imparted to them.

Stevens also urges that the disclosure that Figure 1 is "the elevation of the windscreen with the *wiper blades and arms* arranged *at the top* of the windscreen" (emphasis ours) does not describe simply an end of a wiper area as being at the top, but instead shows that, when parked, the wiper blades as well as the wiper arms are arranged at the top of the windshield. And, says Stevens, all the blades and arms can be at the top of the windscreen only if two adjacent ones operate in phase opposition. The fallacy of this argument, however, becomes manifest once it is observed that no blades or arms are shown or even indicated in Figure 1; thus, the necessary and only reasonable interpretation is that the *pivots* are at the top of the windshield, rather than at the bottom, and necessarily, then, the blades and arms attached thereto must also be generally at the top rather than at the bottom, which is disclosed as an alternative.

Stevens' remaining arguments are based on the drawings in the British Specification and specifically the existence of an "offset" between the top edge of the windshield and the left terminal position of the center blade. It is argued that

> The person skilled in the prior art would know that such an arrangement of the *respective terminal positions* would be most unusual in any system and certainly would *never* be contemplated in a tandem system where the wipers moved in phase. He would recognize that this particular arrangement was adopted by Stevens in his British Provisional Specification *only* because it was the solution to interference in the phase-opposition situation. [Emphasis quoted.]

We cannot accept appellant's argument. It seems to us that Stevens, in his British Specification, quite clearly contemplated the terminal positions shown in his "informal" drawings, including the "offset" from the upper edge of the windshield, with a *tandem* system. In his Figure 2 he shows "diagrammatically" all three wiper blades operating in tandem because they are all simultaneously shown in full lines at the left-hand limits of the areas they wipe, and, conversely, the right-hand limits shown in broken lines. There is nothing in Figure 1 inconsistent with Figure 2 since Figure 1 contains no indication of wiper blades at all. What meager showing the British Specification does contain certainly does not necessarily call for phase opposition operation. It points distinctly to in phase operation.

We therefore agree with the board that the British Specification does not disclose support for the limitation of the count reading "means for imparting conjoint oscillation to said wiper blades in phase opposition." Accordingly the decision of the board is affirmed.

Affirmed.